**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DEBORAH B.,[1] <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAZAKI, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 8:23-cv-00531-MAA <br><br> **MEMORANDUM DECISION AND ORDER REVERSING DECISION OF THE COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |

**I.   INTRODUCTION**

On March 23, 2023, Plaintiff Deborah B. ("Plaintiff") filed a Complaint seeking review of Defendant Commissioner of Social Security's ("Defendant" or "Commissioner") final decision denying her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Social Security

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1  Act.  (Compl., ECF No. 1.)  Pursuant to 28 U.S.C. § 636(c), the parties consented to
2  the jurisdiction of a United States Magistrate Judge.  (ECF Nos. 6, 7.)  On May 23,
3  2023, the Commissioner filed an Answer and the Administrative Record ("AR").
4  (ECF No. 9.)  On June 20, 2023, Plaintiff filed a Brief in Support of Complaint
5  ("Plaintiff's Brief").  (Pl's Br., ECF No. 10.)  On July 19, 2023, Defendant filed
6  Defendant Commissioner's Brief ("Defendant's Brief").  (Def's Br., ECF No. 13.)
7  On July 21, 2023, Plaintiff filed a Statement of No Reply, notifying the Court that
8  she did not intend to file a reply to Defendant's Brief.  (ECF No. 14.)  The matter is
9  fully briefed and the Court deems the matter appropriate for resolution without oral
10 argument.  *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  For the reasons
11 discussed below, the Court reverses the decision of the Commissioner and remands
12 the matter for further administrative proceedings.

**II.     SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

On July 23, 2018, Plaintiff filed an application for a period of disability and DIB, alleging disability beginning on June 17, 2010.  (AR 263–66.)  Plaintiff alleged she was disabled due to chronic spinal problems, right shoulder pain, depression, arthritis on both knees, severe migraines, and lower back pain.  (AR 363.)  The Commissioner denied the application on August 30, 2018, and again upon reconsideration on November 15, 2018.  (AR 78–84, 86–92.)  On January 11, 2019, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 105–06.)  On December 11, 2019, Plaintiff filed an application for SSI.  (AR 18.)  At a telephonic hearing held on December 2, 2021, the ALJ heard testimony from Plaintiff, who was represented by counsel, and a vocational expert.  (AR 37–77.)

In a decision dated January 27, 2022, the ALJ issued a partially favorable decision, finding that Plaintiff was not disabled before July 20, 2016, but became disabled on that date, after making the following findings under the

Commissioner's five-step evaluation. (AR 15–36.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 17, 2010, the alleged onset date. (AR 21.) At step two, the ALJ found that Plaintiff had severe impairments consisting of disc disease of the cervical spine with cervical spinal fusion surgery, degenerative disc disease of the right shoulder, status post surgery, and depression. (*Id*.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the agency's listed impairments. (AR 22.) Next, the ALJ found that Plaintiff had the following Residual Functional Capacity ("RFC"):

> [Plaintiff] has the residual functional capacity to perform sedentary work with the following specific limitations: can lift or carry ten pounds occasionally and less than ten pounds frequently; can sit for six hours and stand or walk for two hours in an eight-hour workday; cannot climb ladders, ropes, and scaffolds; can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch, and crawl; can occasionally perform overhead reaching with the right upper extremity; and is limited to unskilled work (20 CFR 404.1567 and 416.967).

(AR 23.) At step four, the ALJ found that Plaintiff was not capable of performing her past relevant work as a stylist, manager, or retail chain store supervisor. (AR 27.) At step five, the ALJ determined that, prior to July 20, 2016, Plaintiff could perform other work in the national economy, specifically as a charge account clerk. (AR 27–28.) However, the ALJ found that Plaintiff's age category changed on July 20, 2016, and concluded that beginning on July 20, 2016, there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 29.) Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act, from June 17, 2010 to July 20, 2016, but became disabled on July 20, 2016 and continued to be disabled through the date of the decision on January 27, 2022. (*Id*.)

On January 27, 2023, the Appeals Council denied Plaintiff's request for review. (AR 1–6.) Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g).

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the Court reviews the Commissioner's final decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court "must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). "If the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." *Robbins v. SSA*, 466 F.3d 880, 882 (9th Cir. 2006).

///
///
///
///
///

## IV. DISCUSSION

### A. Disputed Issues

The parties raise three disputed issues:

1. Whether the ALJ properly considered the relevant medical evidence of record in assessing Plaintiff's RFC.
2. Whether the ALJ properly considered Plaintiff's subjective symptom statements in assessing Plaintiff's RFC.
3. Whether the ALJ properly developed the vocational issues in this case at step five of his five-step evaluation?

(Pl's Br. 4; Def's Br. 7.)[2]

For the reasons discussed below, the Court finds that reversal and remand for further administrative proceedings are warranted for the second issue, based on the ALJ's consideration of Plaintiff's subjective symptom statements. Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1154 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

### B. Applicable Law

"A claimant's residual functional capacity is what he can still do despite his physical, mental, nonexertional, and other limitations." *Cooper v. Sullivan,* 880 F.2d 1152, 1158 n.5 (9th Cir. 1989) (citing 20 C.F.R. § 404.1545). An RFC assessment requires the ALJ to consider a claimant's impairments and any related

---

[2] With the exception of the Administrative Record, citations to pages in docketed documents reference the page numbers created by the CM/ECF headers.

symptoms that may "cause physical and mental limitations that affect what [he] can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In determining a claimant's RFC, the ALJ considers all relevant evidence, including a claimant's statements and residual functional capacity assessments made by consultative examiners, State Agency physicians, and medical experts. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also id.* §§ 404.1513(c), 416.913(c).

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis. *Trevizo*, 871 F.3d at 678. First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. *Garrison*, 759 F.3d at 1014. "In this analysis, the claimant is *not* required to show 'that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" *Id*. (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof." *Id.* (quoting *Smolen*, 80 F.3d at 1282).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. *Id.* at 1014–15; *see also Robbins*, 466 F.3d at 883 ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of SSA*, 278 F.3d 920, 924 (9th Cir. 2002)). The ALJ must evaluate "the intensity and persistence of those symptoms to determine the extent to which the symptoms limit [the claimant's] ability to perform

///

work-related activities for an adult." Social Security Ruling ("SSR") 16-3p, 2016 SSR LEXIS 4, at *4 (Mar. 16, 2016).

While the ALJ cannot "delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness," *Trevizo*, 871 F.3d at 678 n.5, the ALJ may consider "prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; . . . unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and . . . the claimant's daily activities," *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Smolen*, 80 F.3d at 1284). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014). In addition, the ALJ may consider "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms." *Smolen*, 80 F.3d at 1284. However, it is improper for an ALJ to reject subjective testimony based "'solely on a lack of objective medical evidence to fully corroborate' the claimant's allegations." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1227 (9th Cir. 2009) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)).

The ALJ must make "a credibility determination with findings that are sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)); *see Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony

regarding pain.'" (quoting *Bunnell*, 947 F.2d at 345–46)). Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

### C. Plaintiff's Statements

During the hearing, Plaintiff testified about her medical problems and limitations as follows:

She first became injured in 2006 when she fell and dislocated her right shoulder, which resulted in her having surgery on that shoulder. (AR 54–55.) In 2009, she had an injury at work when she fell from a ladder and landed on her head. (AR 55.) In 2012, she had cervical spine surgery. (AR 57.) The surgery did not fix her medical problems, however, and she continued to have problems using her right arm. (AR 58.)

When asked by her attorney whether she remembered going through a nerve study in early 2013, Plaintiff testified that she had "been through that more than once." (*Id.*) When asked by her attorney if she had difficulty reaching in front of her, Plaintiff answered in the affirmative. (AR 59.) Fastening buttons and typing were a problem for her because her fingers, especially her thumb, would freeze up. (*Id.*) She is right-handed. (*Id.*) Her left shoulder would become weak and exhausted because she used it so much. (AR 60.)

In the mornings, she would get up and try to spend time moving her body for ten to fifteen minutes while standing, but then she would need to sit down or lay down because "the pain [was] excruciating." (*Id.*) She had to lay down to rest her body and neck. (*Id.*) If she got any stress in her body, "everything [would] tense[] up, and then [she would] get a migraine." (*Id.*) If she got a migraine, then her "whole day [would be] shot." (AR 61.) She laid down "all the time[,]" and even at the hearing she was seated in a recliner with a pillow at her lumbar area because her

lower back hurt from her "neck being so rigid." (*Id.*) She had to lay her head back and rest a lot because her head was "extra heavy because of the metal in it." (*Id.*)

When asked by her attorney whether she had any days where she did not have to lay down, Plaintiff responded that she did not have any such days. (*Id.*) When asked by her attorney whether she could remember the last time that she could go all day without laying down, Plaintiff responded that she could not remember such a time. (AR 61–62.) If she only laid down for five or ten minutes in a day, she would be "having a really good day." (AR 62.) She usually took a three-hour nap in the middle of the day, but could "split it up into two one-and-a-half-hour breaks." (AR 62–63.) She needed "big breaks during the day because" she could not hold herself up for that long. (AR 63.) When asked by her attorney how her depression would affect her ability to work, she testified that her pain and depression made it difficult to concentrate. (*Id.*) She took Celexa for her depression. (AR 64.)

Plaintiff's husband did the laundry, and she helped him fold the laundry. (*Id.*) She could put the dishes into the dishwasher. Her husband swept the floor and vacuumed. (AR 65.) Plaintiff could use a feather duster, but her "house [was] not very clean at all." (*Id.*)

### D. Analysis

At the first step of the two-step evaluation, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 26–27.) At the second step, however, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not fully supported for the above reasons." (AR 27.)

Both parties assert that the ALJ based his adverse credibility determination regarding Plaintiff's subjective symptom statements on a lack of supporting objective evidence in the record. (Pl's Br. 16; Def's Br. 18–19.) In addition,

Defendant asserts that the ALJ also discounted Plaintiff's subjective symptom statements because of Plaintiff's "documented improvement in the medical record." (Def's Br. 18.)  Below, the Court addresses each reason upon which the parties contend the ALJ based his rejection of Plaintiff's subjective symptom statements.

### 1. Improvement Documented in Medical Record

Defendant argues that the ALJ properly discounted Plaintiff's subjective symptom statements by citing to "multiple instances of documented improvement in the medical record." (Def's Br. 18.)  Plaintiff, perhaps disagreeing that the ALJ relied on this reason to reject Plaintiff's subjective symptom statements, does not respond to this argument or otherwise address Plaintiff's improvement that was allegedly documented in the medical record. (*See generally* Pl's Br.)

As an initial matter, the Court may review only those reasons that the ALJ specifically cited as grounds to reject Plaintiff's subjective symptom testimony. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.") (citations omitted); *Garrison*, 759 F.3d at 1010 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." (citing *Connett*, 340 F.3d at 874)).  It is well-settled that a reviewing court may not construe an ALJ's general findings from the medical record as reasons to reject a claimant's subjective symptom testimony if the ALJ does not explicitly tie such findings to the testimony. *See Burrell*, 775 F.3d at 1139 ("Although the ALJ made findings . . . concerning Claimant's treatment for headaches, he never stated that he rested his adverse credibility determination on those findings.").

Here, the Court finds that, contrary to Defendant's assertion, the ALJ did not rely on evidence of Plaintiff's improvement in discounting Plaintiff's subjective symptom statements.  The only time the ALJ referenced Plaintiff's improvement was within a summary of the medical evidence. (AR 25 ("Subsequent treatment

records note 'persistent neurologic symptoms,' including weakness and a loss of dexterity in the right hand but slight improvement overall" (citing AR 485, 497, 502)).); (*Id.* ("In December 2013, the claimant's 'severe pain' was characterized as 'improved,' although she s[t]ill had residual deficits (including numbness, weakness, and loss of dexterity)" (citing AR 494)).) The ALJ did not state that he "rested his adverse credibility determination" on these findings, and therefore, the Court cannot, and does not, review this reason as a basis for rejecting Plaintiff's statements about her subjective symptoms. *Burrell*, 775 F.3d at 1139; *see Connett*, 340 F.3d at 874.

### 2. Lack of Objective Medical Evidence

The parties concur that the ALJ discounted Plaintiff's subjective symptom statements based on limited objective medical evidence supporting the severity of Plaintiff's complaints. (Pl's Br. 16; Def's Br. 18–19.) The Court agrees. (AR 24 ("Despite the claimant's allegations, the evidence in the record supports the above residual functional capacity.").)

However, the ALJ cannot reject Plaintiff's subjective symptom statements solely based on a lack of objective medical evidence to corroborate them. *See, e.g., Bunnell*, 947 F.2d at 345 ("[A]n adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain."); *Robbins*, 466 F.3d at 883 ("While an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence."). Here, even assuming the record supports the ALJ's reasoning regarding the lack of support from objective medical evidence, the ALJ did not identify any other clear and convincing reason, supported by substantial evidence, to discount Plaintiff's subjective symptom statements. (*See generally* AR 23–27.) Standing alone, the purported lack of support from objective medical evidence is not a legally sufficient

11

reason to discount Plaintiff's symptom testimony.  Accordingly, reversal is warranted.

### E.      Remand for Further Proceedings

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion.  *Harman v. Apfel*, 211 F.3d 1172, 1175–78 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").

Although the Court has found the ALJ rejected Plaintiff's subjective symptom testimony without clear and convincing reasons, supported by substantial evidence, as described above, the Court is "not satisfied that further administrative proceedings would serve no useful purpose." *Brown-Hunter*, 806 F.3d at 495 (citation and quotation marks omitted).  This is because the record as a whole is not fully developed or free from conflicts and ambiguities.  *See Dominguez v. Colvin*, 808 F.3d 403, 410 (9th Cir. 2015) (further proceedings were warranted where there were "inconsistencies, conflicts, and gaps in the record").  Moreover, Plaintiff herself requests remand for further administrative proceedings.  (Pl's Br. 20.) Given these circumstances, this is not a case where "further administrative proceedings would serve no useful purpose." *Dominguez*, 808 F.3d at 407.

///
///
///
///
///
///

## V.  ORDER

The Court ORDERS that judgment be entered reversing the decision of the Commissioner and remanding this mater for further administrative proceedings.

**IT IS SO ORDERED.**

DATED: August 23, 2023

HONORABLE MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE